**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JOEL PRICE,

        Plaintiff,

v.                                                 Case No: 6:17-cv-1999-Orl-40DCI

ORLANDO HEALTH, INC.,

        Defendant.
_____/

## ORDER

This cause comes before the Court without oral argument on the parties' cross-motions for summary judgment (Docs. 77, 79) and the responses thereto (Docs. 83, 84). With briefing complete, the matter is ripe. Upon consideration, Defendant Orlando Health, Inc.'s Motion for Summary Judgment (Doc. 77) is due to be granted on the issue of standing and the case dismissed.

**I.**     **BACKGROUND**

In this case, Plaintiff Joel Price sues Defendant Orlando Health, Inc., based on Defendant's website's inaccessibility to the visually impaired, under Title III of the Americans with Disabilities Act ("**ADA**"), 42 U.S.C. §§ 12181–12189, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Doc. 1). The Complaint requests a declaratory judgment, injunctive relief, and attorneys' fees. (*Id.*).

Plaintiff is "legally blind" and therefore uses assistive screen reader software to access the Internet. (Doc. 1, ¶¶ 11, 19, 33; Doc. 77-1, 49:7–15). In September 2017, Plaintiff called Defendant "to find out if his medical insurance carrier was accepted at Orlando Health medical facilities and to inquire about the types of medical services

offered therein." (Doc. 1, ¶ 29). Defendant's representative referred Plaintiff to orlandohealth.com to access the information he sought. (*Id.*). However, the website proved inaccessible to Plaintiff and he was "unable to comprehend" the information on Defendant's website. (*Id.* ¶¶ 30–32). Defendant's website "contains access barriers" to visually-impaired individuals and "lacks prompting information and accommodations" for screen reader programs. (*Id.* ¶¶ 33–34). The Complaint alleges that Defendant's inaccessible website excluded Plaintiff "from accessing Defendant's physical medical facility locations." (*Id.* ¶ 35). Plaintiff therefore brought this action to make Defendant's website accessible to the visually impaired.

Plaintiff has lived in Daytona Beach, Florida, for at least the past five years. (Doc. 77-1, 30:4–15). While living in Daytona Beach, Plaintiff has been treated for intermittent emergencies at Halifax Hospital and a hospital on Atlantic Avenue—both of which located in Daytona Beach. (*Id.* 21:13–22:13). Plaintiff has also been treated at the Daytona Beach V.A. Center and an optometry office in DeLand, Florida, in connection with his visual impairment. (*Id.* 52:4–53:16; Doc. 77-2, 56:20–57:6). Plaintiff sees other doctors at the Daytona Beach V.A. Center semi-regularly for other conditions. (*Id.* 83:22–84:8; 85:5–13). Plaintiff visited the Orlando V.A. Hospital "two or three times" in recent years to see an eye specialist. (*Id.* 58:24–59:14). Because Plaintiff does not drive, he is transported to his V.A. and other doctor's appointments by a transportation company retained by the V.A. (*Id.* 58:6–15; 76:1–79:6). Plaintiff has never visited any of Orlando Health's physical locations and does not have plans to visit one in the near future. (*Id.* 138:9–16).

Plaintiff first learned about Orlando Health from other people on the Internet. (*Id.* 107:1–12). In his deposition, Plaintiff stated that he had been thinking about moving to

the Orlando area since he has visited Orlando several times for appointments with specialists, but he does not plan to move anywhere at this time. (*Id.* 107:24–108:3). In his affidavit, Plaintiff claims that he "needed medical services and information about Defendant's facilities" when he contacted Defendant in September 2017. (Doc. 84-6, ¶ 15; *see also id.* ¶ 24 ("I was excluded by these factors from accessing Defendant's physical medical facility locations . . . .")). Again, without citing evidence, Plaintiff's brief maintains that Plaintiff "has concrete plans to use the medical facilities Orlando Health offers once he is able to effectively communicate with Orlando Health." (Doc. 84, p. 9).

Defendant is a Florida corporation operating medical facilities in the Orlando, Florida, area. (Doc. 1, ¶¶ 14–15). Without citing to the record, Plaintiff's Response to Defendant's Motion for Summary Judgment asserts that "Plaintiff resides just 57.8 miles from Defendant's medical facility."[1] Regardless of Plaintiff's failure to cite evidence, the Court takes judicial notice that Plaintiff lives approximately 49.4 miles from the closest Orlando Health facility.[2] Although Plaintiff asserts a plan to visit "Defendant's facilities" in

---

[1] Plaintiff's unsubstantiated assertion of fact is not entitled to credence. *See, e.g.*, *Celotex*, 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").

[2] The Court calculated this distance through a Google Maps query of the distance between Plaintiff's address and the address of Defendant's facilities, see Google Maps, www.maps.google.com (last visited Dec. 4, 2018), and takes judicial notice of that fact. *See* Fed. R. Evid. 201(b)(2), (c)(1), (d); *Munson S.S. Lines v. Newman*, 24 F.2d 416, 417 (5th Cir. 1928) (taking judicial notice of distance between cities); *U.S. v. Williams*, 476 F. Supp. 2d 1368, 1378 n.6 (M.D. Fla. 2007) ("A Court may take judicial notice of the driving distance between two points located in the record using mapping services whose accuracy cannot reasonably be questioned."). The relevant addresses are drawn from Plaintiff's deposition and the affidavit of Carol L. Paris, Director of Rick/Claims Management for Defendant. (Doc. 77-1, 30:4–6; Doc. 89, ¶ 3).

3

the near future, Plaintiff does not specify which of Defendant's eight hospitals[3] he intends to visit.

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[4]

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th

---

[3] (Doc. 89, ¶ 3).

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove an essential element of their claim. *Celotex*, 477 U.S. at 322–23.

## III. DISCUSSION

Both sides advance numerous arguments in favor of their respective motions for summary judgment. However, this matter is due to be dismissed because Plaintiff lacks standing; therefore, the Court need only address standing. Defendant contends that Plaintiff lacks standing to bring this suit for "injunctive relief because there is no real and immediate threat of future discrimination or harm." (Doc. 77, p. 14). Plaintiff disagrees, citing a desire to patronize Defendant's facilities in the future to satisfy the threat of future discrimination requirement. (Doc. 84, pp. 84–85). The Court agrees with Defendant and finds that Plaintiff lacks standing.

A plaintiff must satisfy three requirements to establish standing: (1) injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury will be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that a "some day" intent to return is insufficient); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). The injury-in-fact component requires a plaintiff seeking prospective injunctive relief to plausibly show that she will suffer future disability discrimination by the defendant. *Houston*, 733 F.3d at 1328. This means that the threat of future injury must be "real and

immediate—as opposed to merely conjectural or hypothetical." *Id.* at 1329. Specifically, "a plaintiff seeking an injunction under Title III either must 'have attempted to return' to the non-compliant building or at least 'intend to do so in the future.'" *Id.* at 1336 (citing *Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001)). Generally, a plaintiff's "profession of an 'inten[t]' to return to the places [she] ha[s] visited before" is insufficient to establish standing to pursue injunctive relief. *Lujan*, 504 U.S. at 564.

Analyzing the threat of future discrimination frequently turns on four factors:[5] "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." *See Houston*, 733 F.3d at 1327; *see also Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d 1212, 1222 (M.D. Fla. 2012). These factors are not exclusive, nor is a single factor dispositive; rather a court "must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." *Houston*, 733 F.3d at 1337 n.6.

Because Plaintiff's pleaded injury is an inability to access services offered by Defendant at Defendant's physical locations,[6] Plaintiff's standing depends on a showing of a real threat that Plaintiff would visit Defendant's locations in the future absent the discriminatory conduct. *See Houston*, 733 F.3d at 1328; *see also Carroll v. Farmers &*

---

[5] These four factors comprise the "'proximity test' employed by district courts throughout this circuit." *Kennedy v. Beachside Comm. Props.*, 732 F. App'x 817, 819 (11th Cir. 2018)

[6] Plaintiff alleges that he "desire[s] to patronize Defendant," but the website's deficiencies have "impeded Plaintiff's ability to patronize Defendant's physical" locations. (Doc. 1, ¶ 38). All of Defendant's physical locations are in the Orlando area. (Doc. 89, ¶ 3).

6

*Miners Bank*, No. 2:17-cv-49, 2018 WL 1659481 (W.D. Va. Apr. 5, 2018) (finding that plaintiff failed to show an injury in fact or a real threat of future harm where plaintiff lived nearly four hundred miles from the closest physical location belonging to defendant); *Carroll v. New People's Bank. Inc.*, 1:17–cv–44, 2018 WL 1659482 (W.D. Va. Apr. 5, 2018) (finding that plaintiff failed to show injury in fact or a real threat of future harm where plaintiff lived nearly three hundred miles from the closest physical location).

Indeed, in the context of ADA claims based on inaccessible websites, the physical location is critical. "Where a website is heavily integrated with physical store locations and operates as a gateway to the physical store locations, courts have found that the website is a service of a public accommodation and is covered by the ADA." *Id.* at 1349. *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1348 (S.D. Fla. 2017). However, courts in this Circuit routinely find that websites are not covered by the ADA where the website is unconnected to a physical location. *Id.* at 1348–49 (collecting cases). Therefore, Plaintiff's standing depends on the probability that Plaintiff would patronize Defendant's physical location in the future.[7]

Plaintiff has failed to establish a "real and immediate—as opposed to merely conjectural or hypothetical"—threat of future injury. *See Houston*, 733 F.3d at 1329. Plaintiff has not shown that he has been referred to Orlando Health's doctors, has no scheduled appointments at an Orlando Health, Inc. facility, has never visited an Orlando Health, Inc. facility, and has not articulated a concrete plan to visit one in the near future. Instead, Plaintiff expresses a general desire to access Defendant's facilities (Doc. 84-6,

---

[7] Plaintiff's briefing on the standing issue tacitly acknowledges this point. (Doc. 84, pp. 8–9).

¶ 25),[8] despite his own deposition testimony that he lives a moderate distance from Orlando, seldom leaves Daytona Beach, cannot drive himself, and is under the ongoing care of doctors in Daytona Beach and DeLand to treat his chronic conditions. (Doc. 77-1, 30:4–15, 52:4–53:16, 56:8–57:6; Doc. 77-2, 83:22–84:8, 85:5–13; Doc. 84-6, ¶ 25).

---

[8] Plaintiff failed to specify which of Defendant's facilities he intends to visit in the Complaint, his deposition, or the various affidavits he has filed with the Court. (Doc. 1, ¶¶ 15, 38; Docs. 77-1 through 77-8; Doc. 84, pp. 8–9; Doc. 84-6, ¶ 24). The distance between Plaintiff's residence and the physical locations Plaintiff sought access was therefore material to the Court's standing analysis. But at the close of summary judgment briefing, neither party had come forward with evidence regarding the physical locations of any of Defendant's facilities. Accordingly, the Court ordered Defendant submit an affidavit identifying the location of each of Defendant's physical locations. (Doc. 88). Defendant complied by filing Carol L. Paris' affidavit, which identified the addresses of the facilities in question. (Doc. 89).

Shortly thereafter, Plaintiff filed a Memorandum in Opposition to Defendant's Affidavit and Request for Evidentiary Hearing. (Doc. 90). Therein, Plaintiff asserts that Defendant violated the Court's order at Docket Entry 88 by failing to list the addresses of the "corporate entities and groups, which operate additional offices and facilities [that are] not directly owned by . . . Defendant." (Doc. 89, ¶ 4; Doc. 90, ¶¶ 2–5). Furthermore, Plaintiff claims Ms. Paris' affidavit should have listed facilities where physicians listed on Defendant's "Directory of Physicians" rendered services, even though they are not owned by Defendant. (Doc. 90, ¶¶ 4–6). Finally, Defendant requests to strike Ms. Paris' affidavit for violating Federal Rule of Civil Procedure 26(a)(3) and requests an evidentiary hearing. (*Id.* at pp. 3–4).

First, Plaintiff has not shown why Ms. Paris' affidavit shows that Defendant breached its Fed. R. Civ. P. 26 obligations. Second, Plaintiff's newly-minted-unsworn supposition that he really intends to visit third-party facilities near Daytona Beach where physicians listed on Defendant's physician directory offer services (Doc. 90, ¶ 4)—even though Plaintiff earlier argued that he sought to visit facilities operated by Defendant in Orlando (*See, e.g.*, Doc. 1, ¶¶ 15, 38; Doc. 84, pp. 8–9)—is not credible and does not affect his standing. The fact remains that Plaintiff asserted a desire to visit (an unspecified) one of *Defendant's* physical locations. He may not now, in the eleventh hour, establish standing by arguing in a memorandum that he actually intends to visit Daytona Beach physicians listed on Defendant's online physician directory, but who work at third-party facilities. (*See also* Doc. 91). Among its many defects, this argument is outside the Complaint and belied by the record—namely, Plaintiff's own past filings and representations. Of course, Plaintiff's requests to strike Ms. Paris' affidavit and for an evidentiary hearing are denied.

Plaintiff's indefinite "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury." *See Lujan*, 504 U.S. at 564; *see also Jones v. Family First Credit Union*, No. 1:17-CV-4592, 2018 WL 5045231, at *5 (N.D. Ga. Aug. 6, 2018) (finding that plaintiff failed to allege standing to pursue ADA claims based on inaccessible website where the complaint was "devoid of allegations concerning [the P]laintiff's plans or intent to use Defendant's services in the future." (quoting *Brintley v. Aeroquip Credit Union*, 321 F. Supp. 3d 785, 790 (E.D. Mich. 2018))); *Haynes v. Pollo Operations, Inc.*, No. 17-61003, 2018 WL 1523421, at *2–3 (S.D. Fla. Mar. 28, 2018) (dismissing similar complaint that failed to allege that the plaintiff attempted to access or intended to access the defendant's physical location).

The Court's conclusion that Plaintiff lacks standing is fortified by application of the proximity test. Plaintiff (1) does not live in close proximity to Defendant's locations, (2) has never patronized Defendant's facilities, (3) expresses an indefinite plan to visit Defendant's facilities, and (4) does not travel near Defendant's business frequently. *See Houston*, 733 F.3d at 1327. The totality of these factors weigh heavily in favor of a finding that Plaintiff lacks standing. *See id.* at 1337 n.6 And although Plaintiff visited Orlando to see doctors on a handful of occasions, each visit was made pursuant to a referral from his doctors in Daytona Beach. (*See* Doc. 77-2, 56:20–57:6, 58:24–59:14). Therefore, these visits have little bearing on the question of whether Plaintiff is likely to visit Defendant's facilities in Orlando, in the absence of specific facts showing that Plaintiff's "plan" to visit an Orlando Health, Inc. physical location is more than a "some day" hope. Finding that Plaintiff has standing would undermine the principle that "standing requires

a concrete injury even in the context of a statutory violation." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. 77) is **GRANTED in part** and **DENIED in part**.
   a. The Motion for Summary Judgment based on Plaintiff's lack of standing is **GRANTED**.
   b. The Motion is otherwise **DENIED**.
2. Plaintiff's Motion for Summary Judgment (Doc. 79) is **DENIED**.
3. This case is **DISMISSED** for lack of subject matter jurisdiction.
4. The Clerk of Court is **DIRECTED** to terminate all pending deadlines and close the case.

**DONE AND ORDERED** in Orlando, Florida on December 7, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties